IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ELTON BENNIE SMITH, JR.                                              PLAINTIFF

      v.                    Civil No. 6:11-cv-06036

CORRECTIONAL MEDICAL SERVICES,
INC.; ROLAND ANDERSON, Medical Director,
Correctional Medical Services, Inc.; WARDEN
W.D. REED, Ouachita River Correctional Unit;
DEPUTY DIRECTOR WENDY KELLEY, Ouachita
River Correctional Unit; and JOHN DOE
DEFENDANTS                                                           DEFENDANTS


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Elton Smith Jr., under the provisions of 42 U.S.C. § 1983.  He proceeds *in forma pauperis* and *pro se.*

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.  The case is before me on a motion to dismiss (ECF No. 8) filed by Separate Defendants Warden Reed and Deputy Director Wendy Kelley.  Plaintiff has responded to the motion to dismiss (ECF Nos. 28-29).[1]

1. **Background**

Plaintiff is currently incarcerated in the Arkansas Department of Correction (ADC) at the

---

[1] A report and recommendation was previously entered in this case.  ECF No. 27.  The report and recommendation was not adopted (ECF No. 30) in view of Plaintiff's objections/response to the motion to dismiss (ECF Nos. 28 & 29).

Randall Williams Correctional Facility. During the time at issue in this case, Plaintiff was incarcerated at the Ouachita River Correctional Unit of the ADC.

According to the allegations of the complaint, Plaintiff suffered from several heart attacks which required the implantation of eight stents.[2] Plaintiff asserts he was told by cardiologists at two separate hospitals that he was required to take Plavix® [3] (75 mg) and an Aspirin (81 mg) everyday for the remainder of his life.

After he became incarcerated at the ADC, Plaintiff alleges he was told his prescription for Plavix® had to be approved by Correctional Medical Director Roland Anderson. Plaintiff indicates he waited from December 18, 2010, until January 12, 2011, for approval of his prescription. On January 12th, Plaintiff was seen by Dr. Ware and given a prescription for Plavix®. The prescription was cancelled three days later because it had not been approved by Dr. Anderson. As of the filing of the complaint on May 6, 2011, Plaintiff states he had still not received the Plavix®.

Plaintiff attached to his complaint a grievance 0R-11-00024. The grievance indicates it was referred to the medical department. Dream Redic Young responded indicating that the Plavix® prescription had expired. She stated the medication had been reordered on January 18th but because his "procedure" was over two years old and the medication was "non-formulary[4]" the prescription would have to be approved by Dr. Anderson. She indicated they should have an answer in a few

---

[2] "A stent is a small mesh tube that's used to treat narrow or weak arteries. Arteries are blood vessels that carry blood away from your heart to other parts of your body." http://www.nhlbi.nih.gov/health/health-topics/topics/stents/ (Accessed August 23, 2012).

[3] Plavis is a brand name for the drug clopidogreal. "Clopidogrel is used to prevent strokes and heart attacks in patients at risk for these problems. Clopidogrel is in a class of medications called antiplatelet drugs. It works by helping to prevent harmful blood clots that may cause heart attacks or strokes." A person is not to stop taking clopidogrel without talking to his doctor." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601040.html (accessed August 22, 2012).

[4] "A 'formulary' is a predetermined list of economical medications that doctors at an institution may prescribe; non-formulary drugs are drugs that do not appear on the approved list of medications." *Rozzelle v. Rossi*, 307 Fed. Appx. 640, 641 n.2 (3d Cir. 2008)

days. Plaintiff submitted an appeal in the area of the form provided for appeals. On April 6th Deputy Director Wendy Kelley, due to delays, found his grievance to have merit. Dream Redic-Young was contacted and her office was to send Plaintiff's authorization for the medication in that day.

2. **Discussion**

First, Defendants contend Plaintiff has failed to exhaust his administrative procedures and the claims are subject to dismissal under the provisions of the Prison Litigation Reform Act (PLRA). Second, Defendants maintain Plaintiff has alleged, and can prove, no set of facts demonstrating that they were deliberately indifferent towards his medical needs. Third, Defendants argue the official-capacity claims are barred by sovereign immunity to the extent Plaintiff seeks monetary damages.

**Exhaustion of Administrative Remedies**

Defendants concede the Plaintiff submitted grievance OR-11-OOO24; however, they maintain Plaintiff failed to exhaust his administrative remedies by not particularly naming the ADC Defendants in his grievance. Plaintiff argues that the Defendants were well aware of his grievance. He also points out that the grievance procedure, AD 10-32 IV(G)(6), provides that "[a] written decision or rejection of an appeal [by the Deputy Director] is the end of the grievance process."

The PLRA, 42 U.S.C. § 1997e(a), mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Administrative Directive 10-32 sets for the inmate grievance procedure. ECF No. 14-1. With respect to step one, inmates are advised both in the administrative directive and on the grievance that the forms must include "the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." ECF No. 1 at pg. 13; ECF No. 14-1, IV(E)(2). Inmates are further advised that they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 claim and Claims Commission claim. If this is not done, [inmates are advised], their lawsuits or claims may be dismissed immediately." ECF No. 14-1(N).

Plaintiff did not identify any of the Defendants as responsible parties or individuals involved in the occurrence he submitted the grievance on. Because AD 10-32 contains an express identification requirement, Defendants maintain that Plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit.

While this initially appears to be a meritorious argument, on closer examination this fails to

take into consideration the fact that Defendants considered the merits of his grievance and the appeal instead of denying it on procedural grounds for non-compliance with the grievance procedure. In *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012), the Eighth Circuit considered "whether a grievance form that could have been denied for failure to comply with a procedural requirement is nonetheless exhausted for PLRA purposes if the institutional decision-maker instead denied it on its merits." The Eighth Circuit joined all other circuits that had addressed the issue and ruled that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." It noted that all the benefits of the exhaustion requirement, including allowing prisons to address complaints first, reducing litigation to the extent complaints are resolved, and preparing a useful record for litigation, are "fully realized when an inmate pursues the prison grievance process to its final stage and received an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies." *Id.; see also Reed-Bey v. Pramstaller*, 603 F.3d 322, (6th Cir. 2010)(requirement that inmate name all defendants in a grievance procedure does not does not preclude exhaustion when the decision-maker does not enforce it own rules).

### **Failure to State a Claim**

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(*quoting Ashcroft v.*

*Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1940 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (*quoting Iqbal*, 129 S. Ct. at 1949). The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims.).

Plaintiff has asserted a denial of medical care claim. "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v.Nix*, 872 F.2d 800, 804 (8th Cir. 1989). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)(*citing Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

Plaintiff has alleged that he has a serious heart condition that includes a history of three heart

attacks and heart surgery with the implantation of eight stents. ECF No. 1 at pg. 5. He further contends that he had been on a prescription medication, Plavix®, for several years and had been told he would have to continue to take this medication the rest of his life. *Id.* Despite this, he alleges that his efforts to obtain the medication have been turned down by the Defendants based not on any new medical evidence regarding his physical condition but instead on a non-medical requirement imposed by Defendants. Plaintiff has asserted a plausible claim.

### Sovereign Immunity

Eleventh Amendment immunity bars a § 1983 lawsuit against a state agency or state official in official capacity even if state entity is the moving force behind deprivation of federal rights. *See Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 743-44 (8th Cir. 1998). Official capacity claims against Warden Weed and Deputy Director Kelly are therefore barred. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

In any event, Plaintiff asserts that his intent is to assert individual capacity claims only. The Clerk should be directed to note on the docket sheet that Plaintiff is asserting only individual capacity claims against Warden Reed and Deputy Director Kelly.

### CONCLUSION

I therefore recommend that the motion to dismiss (ECF No. 8) be granted in part and denied in part. Specifically, I recommend that it be granted with respect to any official capacity claims asserted against Warden W.D. Reed and Deputy Director Wendy Kelley. In this regard, the Clerk should be directed to note on the docket sheet that Plaintiff is asserting only individual capacity claims against Warden Reed and Deputy Director Kelly. In all other respects, the motion should be

denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of August 2012.

                                                  /s/ Barry A. Bryant
                                                HON. BARRY A. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE