IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


ELTON BENNIE SMITH, JR.                                                PLAINTIFF


v.                                    Civil No. 3:11-cv-06036


CORIZON, INC.; MEDICAL DIRECTOR
ROLAND ANDERSON; WARDEN W.D.
REED; DEPUTY DIRECTOR WENDY
KELLEY; JOHN DOE; JUDITH SAVOY;
DR. SHIRLEY BARNES; DREAM
REDIC-YOUNG; DR. DAVID WARE;
and NURSE JENNIFER HUGHES                                         DEFENDANTS


**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, Elton Smith, pursuant to 42 U.S.C. § 1983.

Plaintiff is no longer incarcerated.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and

(3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the

undersigned for the purpose of making a report and recommendation.

Currently before the Court is Defendants Warden Reed and Wendy Kelley's ("ADC

Defendants") Motion to Dismiss.  ECF No. 69.  Plaintiff responded.  ECF No. 87.  After careful

consideration, I make the following Report and Recommendation.

**I.     BACKGROUND**

During the time at issue in this case, Plaintiff was incarcerated at the Arkansas Department

of Corrections, Ouachita River Correctional Unit.  Plaintiff is no longer incarcerated.

Plaintiff filed his original Complaint on May 16, 2011.  ECF No. 1.  Defendants Reed and

Kelley filed their first Motion to Dismiss on January 17, 2012.  ECF No. 8.  Plaintiff failed to file a timely response to Defendants Reed and Kelley's first Motion to Dismiss.

On July 16, 2012, this Court issued a Report and Recommendation recommending Defendants Reed and Kelley's first Motion to Dismiss be granted and the claims against Defendants Reed and Kelley be dismissed without prejudice.  ECF No. 27.  Plaintiff filed Objections to the July 16, 2012 Report and Recommendation.  ECF No. 29.  On August 1, 2012, the Honorable Robert T. Dawson, United States District Judge declined to adopt the July 16, 2012 Report and Recommendation and directed this Court to reconsider Defendants Reed and Kelley's first Motion to Dismiss in light of Plaintiff's objections to the Report and Recommendation.  ECF No. 30.

In its reconsideration of Defendants Reed and Kelley's first Motion to Dismiss, this Court recommended the Motion be granted in part and denied in part (ECF No. 32) and the Honorable Robert T. Dawson adopted this Recommendation in its entirety on September 28, 2012 (ECF No. 34).

Plaintiff subsequently filed multiple motions to amend and supplement, and the Court granted Plaintiff leave to file an amended complaint.  Plaintiff filed his Amended Complaint on January 22, 2013.  ECF No. 58.  In response to the Amended Complaint, Defendants Reed and Kelley filed the instant Motion to Dismiss.

In Plaintiff's Amended Complaint, he names Warden W. D. Reed and Deputy Director Wendy Kelley (among other non-ADC employees) as defendants in this matter, and states he is suing them in both their official and individual capacities.  ECF No. 58.  Plaintiff claims his Eighth Amendment rights were violated by Defendants when they acted deliberately indifferent regarding

the denial of Plaintiff's medication—specifically the prescription medication Plavix.

According to the allegations of the Amended Complaint, Plaintiff suffered three heart attacks in 2008 prior to being incarcerated in the Arkansas Department of Correction Ouachita River Unit ("ADC") on May 29, 2009.  Upon incarceration in the ADC in May 2009, Plaintiff had eight coronary arterial stents,[1] and had been advised by cardiologists at the Veteran's Administration Medical Center-Memphis and St. Bernard's Hospital-Jonesboro that he needed to take Plavix[2] and aspirin for the remainder of his life.   Plaintiff claims Defendants Reed and Kelley were deliberately indifferent to his medical needs and "through their actions and/or inactions" violated Plaintiff's Eighth Amendment rights.  Given Defendants Reed and Kelley's positions as supervisors and Plaintiff's allegations that he had to notify Defendants Reed and Kelley of his denial of medication, the Court construes Plaintiff's claim against Defendants Reed and Kelley as a failure to take corrective action claim.  Plaintiff has not claimed that Defendants Reed and Kelley actually denied him his prescription of Plavix.[3]

---

[1] "A stent is a small mesh tube that's used to treat narrow or weak arteries . . . a stent is placed in an artery as part of a procedure called percutaneous coronary intervention (PCI), sometimes referred to as a coronary angioplasty.  PCI restores blood flow through narrow or blocked arteris.  A stent helps support the inner wall of the artery in the months or years after PCI.  http://www.nhlbi.nih.gov/health/health-topics/topics/stents/ (accessed June 21, 2014).

[2] Plavix is a prescription medicine used to treat people who have any of the following: chest pain due to heart problems; poor circulation in their legs (peripheral arterial disease); a heart attack; a stroke.  "Plavix is used alone or with aspirin to lower your chance of having another serious problem with your heart or blood vessels such as heart attack, stroke, or blood clot that can lead to death."  http://www.fda.gov/downloads/Drugs/DrugSafety/UCM243349.pdf (accessed June 12, 2014).

[3] The Court notes that Defendants Reed and Kelley's Motion to Dismiss is based on a failure to exhaust argument.  Therefore, the Court will not enumerate all facts alleged by Plaintiff herein.  Instead, the Court limits its rendition of the facts to those  facts necessary to analyze whether Plaintiff fully and properly exhausted his claims prior to filing this lawsuit.

Plaintiff states in his Amended Complaint that grievance OR-11-00024 is the genesis of this action, and Plaintiff attaches this grievance to his Amended Complaint. Further, Plaintiff discusses grievance OR-11-00206, and numerous letters or requests he sent directly to Defendants Reed and Kelley within his Amended Complaint. Plaintiff also attaches these documents to his Amended Complaint.[4]

On January 3, 2011, Plaintiff submitted an informal grievance and this form was labeled OR-11-0024 by ADC staff. ECF No. 58, p. 31. In this grievance Plaintiff states:

> on 12-22-10 I submitted an inmate request form to the infirmary that I was out of Plavix, a heart medication. I ran out of Plavix on 12-21-10. I had submitted the re-order sticker on or about 12-18-10. I then submitted a missing medication form on or about 12-24-10. On 12-26-10 I received a reply from Nurse Jennifer Hughes that my 'med has been ordered on 12-24-10.' On Jan 2, 2011 I submitted a sick call slip mentioning I hadn't received the Plaivix. By chance the nurse I saw was Jennifer Hughes. She asked about my 'problem' then said she couldn't find anything in the computer about the Plavix being ordered. I told her I have the inmate request form from her saying they'd been ordered on 12-24-10. Plavix is not to be taken sporadically. On the sick call slip I mentioned I was to see a doctor about a 14 month scalp . . . problem. She said it takes 3 weeks. I was scheduled for a dr. on 12-13-10 by Nurse Hughes. Today would be more than 3 weeks. Hunter said it was ordered on 12-31-10.

Unit Level Grievance Form OR-11-0024, ECF No. 28, p. 31 (errors in original). Nurse Young replied to this grievance on January 7, 2011 stating Plaintiff's prescription had expired. She explained Plaintiff's Plavix was reordered, but the ordering required approval from the regional medical director and that approval was in process. Nurse Young

---

[4] Because Plaintiff incorporated these documents into his Amended Complaint, the Court will consider them here on this Motion to Dismiss. *See Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697, n. 4 (8th Cir. 2003) ("in considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint").

indicated the grievance had merit but was being resolved.  Health Services Response to Unit Level Grievance OR-11-0024, ECF No. 58, p. 32.

Plaintiff then appealed Nurse Young's response stating that his Plavix is necessary and asking for assurance that this delay does not happen again.  Plaintiff did not mention any person by name in his appeal other than LPN Hughes.  Health Services Response to Unit Level Grievance, ECF No. 58, p. 32.

On April 6, 2011, Defendant Wendy Kelley responded to Plaintiff's appeal.  Defendant Kelley gave a history of Plaintiff's grievance and indicated he still did not have his Plavix prescription.  Defendant Kelly noted that her staff contacted Nurse Young, and Nurse Young reported that the authorization for Plaintiff's Plavix prescription would be sent that day.  Chief Deputy/Deputy/Assistant Director's Decision OR-11-0024, ECF No. 58, p. 33.

On March 17, 2011, Plaintiff submitted a second informal grievance complaining he still had not received his Plavix prescription.  Unit Level Grievance Form OR-11-00206, ECF No. 58, p. 34.  In this Grievance Plaintiff stated:

> On Sat, March 12, I was seen by the unit physician, Dr. Ware.  He ordered me 75 mg Plavix.  He gave me a 3 day emergency supply.  I took the last one today (3/14/11).  Terry Douglas and LPN Hunter brought OPM's by tonite and Hunter wouldn't give me AM issue medication form and she told Douglas Terry that some other Doctor had rescinded the prescription.  Presumably this is a doctor who hasn't seen me.  I've filed a previous informal and then formal greivance.  Dream Young returned an inmate request form to me today 3-14-11 saying I should've received the 75 mg Plavix on 3-12-11.  That was the three pills given as emergency supply.  What doctor rescinded the prescription and why?  On 3-17-11 LPN Hunter said Dr. Anderson overrode Dr. Ware.

Unit Level Grievance Form OR-11-00206, ECF No. 58, p. 34 (errors in original).  Nurse Young

5

responded to Plaintiff's grievance stating that the medical director did not approve Plaintiff's prescription, and therefore, he would be placed on aspirin therapy. Nurse Young found Plaintiff's grievance without merit. Unit Level Grievance Form OR-11-00206, ECF No. 58, p. 35.

On May 3, 2011, Plaintiff appealed this decision by Nurse Young. In this appeal, Plaintiff disputes Dr. Roland Anderson's decision to discontinue his Plavix prescription. Dr. Ware is the only other person Plaintiff includes by name in this appeal. Unit Level Grievance Form OR-11-00206, ECF No. 58, p. 35.

On June 21, 2011, Defendant Kelley responded to Plaintiff's appeal. In her response Defendant Kelley noted Dr. Anderson, as medical director, did not authorize Plaintiff's Plavix prescription because there was no clinical reason to do so. Defendant Kelley denied Plaintiff's appeal.

Plaintiff also claims he made Defendant Kelley aware he was being denied his Plavix prescription on February 25, 2011 and again on September 27, 2011 by sending her personal letters about the situation. ECF No. 58, p. 12. Attached to Plaintiff's Amended Complaint are letters to Defendant Kelley dated June 19, 2012 and an undated letter that references Defendant Kelley's June 21, 2011 response to his appeal.

Additionally, Plaintiff claims he made Defendant Reed aware he was being denied Plavix on March 31, 2011, April 7, 2011, and again on April 19, 2011. ECF No. 58, pp. 12-13. In his March 31, 2011 letter, Plaintiff states that the letter is a follow-up regarding his removal from Plavix. ECF No. 58, p. 46. On April 7, 2011, Plaintiff sent an inmate request form to Defendant Reed explaining that Dr. Anderson overrode Dr. Ware's prescription of Plavix. Defendant Reed's staff responded to this request stating Nurse Young informed represented the nursing staff was

working to get the Plavix.  ECF No. 58, p. 47.  Plaintiff sent another inmate request to Defendant Reed on April 19, 2011 complaining that Nurse Young had been working on getting his Plavix since December 2010.  Defendant Reed's staff responded again stating Nurse Young informed them they were working to get the medication.  ECF No. 58, p. 48.

While Defendants Reed and Kelley concede Plaintiff exhausted the grievances alleged in OR-11-00024 and OR-11-00206 pursuant to ADC policy, they argue Plaintiff failed to exhaust his available administrative remedies against them because he failed to list them by name in either of his exhausted grievances.

Plaintiff responded to Defendants Reed and Kelley's Motion to Dismiss arguing: (1) the Court already denied Defendants Reed and Kelley's motion to dismiss in its September 28, 2012 Order; (2) he exhausted his claims by sending letters or requests directly to Defendants Reed and Kelley; (3) Defendants Reed and Kelley were on notice that Plaintiff was denied Plavix; (4) Plaintiff could not have included everyone who was denying him Plavix in his grievance because he did not know who all was responsible; (5) Defendant Kelley was involved in the grievance process because she responded to his appeal; (6) Plaintiff could not have included Defendant Kelley in his grievance because he was unaware of her involvement when he filed his grievance. Plaintiff also argues the merits of his claims and states that Defendants Reed and Kelley "failed to intervene" and Defendant Reed "did nothing to intervene after Plaintiff made personal appeals to him . . . ."  ECF No. 87.

## II.   LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support their claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III.   DISCUSSION

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

8

Administrative Directive 10-32 dictates the inmate grievance procedure at the ADC during the time in issue here. ECF No. 14-1.[5] With respect to step one, inmates are advised both in the administrative directive and on the grievance form that the forms must include "the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." ECF No. 1 at p. 13; ECF No. 14-1, IV(E)(2). Inmates are further advised that they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 claim and Claims Commission claim. If this is not done, [inmates are advised], their lawsuits or claims may be dismissed immediately." ECF No. 14-1, IV(N).

In this Court's September 28, 2012 decision on Defendants Reed and Kelley's first Motion to Dismiss, the Court noted that Plaintiff failed to identify Defendants Reed or Kelley in his exhausted grievances, OR-11-0024 or OR-11-00206, pursuant to ADC policy requirement. Further, the Court noted that because the ADC Administrative Directive contains an express identification requirement, Plaintiff failed to comply with the ADC grievance procedures and properly exhaust his claims prior to filing this suit. ECF Nos. 32, 34. In that decision, however, the Court declined to dismiss Plaintiff's claims for failure to exhaust based on *Hammett v. Cofield*, 681 F.3d 945 (8th Cir. 2012). The Court explained in that Report and Recommendation that Plaintiff's failure to follow the ADC's procedural requirements was negated by the fact that the ADC considered his grievances on the merits.

In *Hammett*, the Eighth Circuit Court of Appeals declined to dismiss the plaintiff's claims for failure to exhaust because the prison considered his claims on the merits even though it the grievances were filed out of time. Particularly, the Court of Appeals considered "whether a

_____

[5] Attached as Exhibit 1 to Defendants Reed and Kelley's first Motion to Dismiss.

9

grievance form that could have been denied for failure to comply with a procedural requirement is nonetheless exhausted for PLRA purposes if the institutional decision-maker instead denied it on its merits." *Id.* at 947. The Court of Appeals joined all other circuits that had addressed the issue and ruled that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." It noted that all the benefits of the exhaustion requirement, including allowing prisons to address complaints first, reducing litigation to the extent complaints are resolved, and preparing a useful record for litigation, are "fully realized when an inmate pursues the prison grievance process to its final stage and received an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies." *Id.; see also Reed-Bey v. Pramstaller,* 603 F.3d 322 (6th Cir. 2010) (requirement that inmate name all defendants in a grievance procedure does not preclude exhaustion when the decision-maker does not enforce its own rules).

In its September 28, 2012 decision, the Court determined Plaintiff's failure to include Defendants Reed and Kelley's names in his exhausted grievances fell within the *Hammet* exception. The Court now notes, however, that the case law on this issue is unclear and for this reason, the Court will take this opportunity to survey the case law and reconsider the issues raised in the instant Motion to Dismiss.[6]

The most recent decision issued by the Court of Appeals on this issue is *Champion v. Akins,*

---

[6]While Plaintiff argues the Court has already ruled on Defendants Reed and Kelley's Motion to Dismiss the Court notes that the instant Motion to Dismiss is directed to Plaintiff's Amended Complaint, and Defendants Reed and Kelley's first Motion to Dismiss was direct to Plaintiff's original complaint. Further, new case law is now available on this issue and, as explained, this case law shows the Court's August 24, 2012 Recommendation on this matter was incorrect and should be reconsidered.

498 Fed.Appx 670 (8th Cir. 2013) (affirmed the district court's grant of defendants' motion for summary judgment for failure to exhaust) (unpublished opinion).[7]  In *Champion* the district court found Plaintiff failed to exhaust his administrative remedies as to his claims against the wardens because he did not state in any of his exhausted grievances how the wardens were involved in the grieved incidents.  The Court of Appeals noted that even though the wardens read Plaintiff's grievances, Plaintiff had not made any grievances against the wardens in his exhausted grievances. *Id.*

One year prior to *Champion* the Court of Appeals declined to affirm a district court's similar decision granting a motion to dismiss.  *See Bower v. Kelley,* 494 Fed.Appx 718 (8th Cir. 2012) (reversing the district court's grant of summary judgment for failure to exhaust).  In *Bower,* the Court of Appeals rejected the defendants argument that the claims against them were rightly dismissed because the plaintiff failed to name them specifically in any exhausted grievances.  The Court of Appeals cited to *Hammett* as support for its decision in *Bower* with no further analysis.  *Id.* Interestingly, the *Champion* decision makes no mention of the *Bower* decision.

Convoluting matters further is *Ferrell v. Norris,* 441 Fed.Appx. 399 (8th Cir. 2011) (affirming the district court's dismissal of defendants for failure to exhaust because the plaintiff failed to specifically name the defendants in his grievances) (unpublished opinion) and *Adams v. Hobbs,* 402 Fed.Appx. 157 (8th Cir. 2010) (affirming the district court's dismissal of defendants for failure to exhaust because the plaintiff failed to specifically name the defendants in his grievances)

---

[7] The Court notes that the unpublished Court of Appeals cases cited herein are cited pursuant to Rule 32.1A of the United States Court of Appeals for the Eight Circuit Local Rules. Pursuant to Rule 32.1A, the Court notes these opinions were issued after January 1, 2007, are persuasive to the issue presented here, and there are no published opinions on the distinct issue presented here.

(unpublished opinion).  Both of these decisions were issued prior to *Bower,* but the holdings are in line with the *Champion* decision.  *Bower* does not reference *Ferrell* or *Adams.*

Accordingly, it appears *Bower* stands alone and the trend in the Court of Appeals is to require a *pro se* plaintiff to specifically name in his grievances those which he asserts grievances against in accordance with the ADC grievance procedure.

Further, the Eastern District of Arkansas recently issued an opinion with facts similar to those presented here. *See Waller v. Kelley,* 956 F.Supp.2d 1007, 1013 (E.D. Ark. July 9, 2013).  In *Waller*, the district court interpreted *Hammett* to state only a narrow exception to the PLRA exhaustion requirement:

> Hammett only applies in cases where prison officials overlook or ignore procedural flaws in a prisoner's grievances (which otherwise would have allowed them to deny the grievances) and reach and decide the merits of the specific claims asserted against specifically named individuals.  In such cases, when a prisoner later files a § 1983 action that asserts the same claims against the same named individuals, any procedural defects in the grievance can not be used by a defendant to support a failure to exhaust argument.

*Waller*, 956 F.Supp.2d at 1013.  In light of the Court of Appeals decisions, the Court agrees with this interpretation.

Here, as in *Waller*, Plaintiff fully exhausted at least some grievances but did not name Defendants Reed and Kelley in the exhausted grievances.  Additionally, Plaintiff failed to state any grievance against these two Defendants for their failure to take corrective action—the claim stated against Defendants Reed and Kelley in this action.  Therefore, because Plaintiff failed to list Defendants Reed and Kelley in his exhausted grievances or to file any grievances against them, the ADC was not put on notice of the claims Plaintiff asserts against Defendants Reed and Kelley in this lawsuit, and the ADC was unable to address and correct any such problems as required by the PLRA. *See Jones,* 549 U.S. at 219 (the PLRA's purpose is to allow "a prison to address complaints about

12

the program it administers before being subjected to suit").  This is distinguishable from *Hammett* where the plaintiff's grievances were filed late but the prison nevertheless accepted and considered the grievances on the merits.  *Hammett*, 681 F.3d 945 (8th Cir. 2012).  In *Hammett,* the prison was afforded an opportunity to consider and correct the grievances first.  *Id.*  Here no such opportunity was provided to the ADC regarding Plaintiff's claims against Defendants Reed and Kelley.

Moreover, Plaintiff's complaints against Defendants Reed and Kelley did not arise until the exhaustion of grievances OR-11-0024 and OR-11-00206 as it was Defendants Reed and Kelley's failure to intervene in response to these grievances that gave rise to Plaintiff's current claims against them.  Therefore, Plaintiff could not possibly have exhausted his claims against Defendants Reed and Kelley with OR-11-0024 and OR-11-00206.  Additionally, there is no indication Plaintiff filed any additional grievance against either Defendants Reed or Kelley.

Lastly, Plaintiff's argument that Defendants Reed and Kelley were on notice Plaintiff was being denied Plavix and this notice satisfies his exhaustion requirements is unconvincing.  The PLRA requires Plaintiff to first give the ADC the opportunity to address and correct his grievances prior to bringing suit on the matter.  This notice that Plaintiff claims Defendants Reed and Kelley were given is unrelated to his claims against them.  He claims here that Defendants Reed and Kelley failed to intervene or failed to act when he notified them of the medication denial.  This claim is separate and apart from the claim that Plaintiff was denied medication (the notice he provided each Defendant and the ADC officials).

Accordingly, Plaintiff has failed to properly exhaust his claims against Defendants Reed and Kelley pursuant to the PLRA, and all of Plaintiff's claims against Defendants Reed and Kelley should be dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, I recommend Defendants Reed and Kelley's Motion to Dismiss (ECF No. 69) be **GRANTED** and Defendants Reed and Kelley be dismissed from this action without prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 23rd day of June 2014.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE